*FOR PUBLICATION*

---

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX
APPELLATE DIVISION**

---

GOVERNMENT OF THE VIRGIN ISLANDS ) D.C. Civ. App. No. 2005/055
IN THE MATTER OF THE APPLICATION ) Sup. Ct. Fam. No. C14/2001
OF THE DEPARTMENT OF HUMAN SERVICES )
FOR THE TEMP. CARE, CUSTODY AND )
CONTROL OF: N.K., A MINOR, )
_____ )

On Appeal from the Superior Court of the Virgin Islands
**Superior Court Judge: Hon. Patricia D. Steele**

Considered: March 30, 2010
Filed: August 1, 2011

BEFORE:   **CURTIS V. GÓMEZ**, Chief Judge, District Court of the Virgin Islands; **RAYMOND L. FINCH**, Judge of the District Court of the Virgin Islands; and **JAMES S. CARROLL III**, Judge of the Superior Court of the Virgin Islands, sitting by designation.

ATTORNEYS:

**Gertrude LeCointe, Esq.**
St. Croix, U.S.V.I.
        Attorney for Appellant,

**Maureen Phelan, AAG**
St. Thomas, U.S.V.I.
        Attorney for Appellee.

*In the interest of N.K., a minor*
D.C.Crim. App. No. 2005/0055
Memorandum Opinion
Page 2

## Memorandum Opinion

At issue in this case is whether the Superior Court is required to exercise judicial oversight over a case concerning a neglected minor, where her father's parental rights have not been terminated. Because we conclude that the Superior Court improperly closed the file in this case, we remand.

### I. FACTUAL AND PROCEDURAL BACKGROUND

N.K., was born at home on April 18, 2000. One day later, N.K. was brought to the Juan Louis Hospital. There, she was diagnosed with congenital syphilis. In the course of the year that followed her birth, N.K. was moved from one home to another. The Virgin Islands Department of Human Services ("DHS") filed a petition for N.K.'s custody. The DHS petition included allegations that N.K.'s parents smoked crack-cocaine and could not care for their daughter.

N.K.'s mother voluntarily executed a temporary placement agreement and on May 23, 2000, DHS took N.K. into emergency protective custody. In May of 2000 she was placed at the Queen Louise Home for Children ("Queen Louise").[1] During the period that

---

[1] N.K. remained at Queen Louise until November 20, 2002.

*In the interest of N.K., a minor*
D.C.Crim. App. No. 2005/0055
Memorandum Opinion
Page 3

N.K. was placed with Queen Louise, the court held several hearings.[2]

On May 8, 2001, the court determined that N.K.'s continued removal from her parents was necessary to protect her health, safety and well being and ordered that N.K. be placed in the temporary legal custody of DHS. On July 9, 2001, the court held a hearing and found sufficient probable cause to substantiate that N.K. was a neglected child. Review hearings were held on September 12, October 25, and December 12, 2001, to consider N.K.'s on-going needs. At the October 25th hearing, N.K.'s case was consolidated with cases concerning her mother's other children.[3]

On April 17, 2002, N.K.'s mother stipulated that her daughter was neglected. After a combined adjudicatory/dispositional hearing held on February 19, 2003, the court held that N.K.'s father was also unable to provide for her care, and explicitly determined that N.K. fell under the statutory definition of a neglected child. On even date, N.K.'s mother voluntarily surrendered her parental rights. The court terminated N.K.'s mother's rights, and placed

---

[2] The Superior Court appointed attorney Gertrude LeCointe, Esq. as N.K.'s guardian ad litem. Attorney LeCointe represented N.K. at the hearings and filed the appellate brief on her behalf.

[3] Those children were subsequently adopted and their cases closed.

*In the interest of N.K., a minor*
D.C.Crim. App. No. 2005/0055
Memorandum Opinion
Page 4

N.K. in the permanent legal custody of DHS. N.K.'s father's rights, however, were not terminated.

Between November of 2002 and May of 2003, N.K. was in and out of foster home placements. On May 7, 2003, the Superior Court ordered that, upon completion of an interstate monitoring program[4], N.K. be placed in the physical custody of P.K., N.K.'s family member in the State of Florida. The court also ordered DHS to continue courtesy supervision once N.K. was placed with P.K.[5]

In July of 2003, the trial court ordered that P.K. continue to exercise temporary physical and legal custody over N.K., and that DHS continue to monitor N.K.'s placement through the interstate compact. The court also ordered DHS to explore whether P.K. adopting N.K. would be in the child's best interest. N.K.'s father was absent throughout the several review hearings that took place throughout this process.[6]

At a hearing held on May 12, 2004, P.K. expressed that she wanted to adopt N.K. The Department of Human Services for the state of Florida represented that N.K. was being well cared for by

---

[4] The Interstate Compact on the Placement of Children.

[5] On June 19, 2003, N.K. was placed in the temporary legal custody of P.K.

[6] On February 18, 2004, the court orders DHS to use its best efforts to secure N.K.'s father's address and telephone number.

*In the interest of N.K., a minor*
D.C.Crim. App. No. 2005/0055
Memorandum Opinion
Page 5

P.K., and that as a result, it wished to close N.K.'s case. During the May hearing, there was also testimony that N.K.'s father ("G.K.") was diagnosed with cancer and was living with P.K. from May to June of 2003 -- during the early period of N.K.'s placement with P.K. However, sometime during the summer of 2003, N.K.'s father moved out of P.K.'s home. Up until the filing of this notice of appeal, his whereabouts were unknown to his family, P.K., the court or the attorney appointed by the court to represent him.

By order issued May 21, 2004, the court determined that it was in N.K.'s best interest for P.K. to exercise permanent legal and physical custody over N.K. However, the trial court also concluded that N.K.'s father had not surrendered his parental rights, and ordered DHS to continue its efforts to locate him.[7]

On December 23, 2004, the court closed N.K.'s case. However, her father's parental rights had not been terminated. This timely appeal filed by N.K.'s guardian ad litem followed.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to consider final judgments from the Family Division of the Superior Court of the Virgin Islands. *See* Revised Organic Act of 1954 § 23A; 48 U.S.C. § 1613a; V.I. Code

---

[7] (J.A. 57-59.)

*In the interest of N.K., a minor*
D.C.Crim. App. No. 2005/0055
Memorandum Opinion
Page 6

Ann. tit. 16, § 109 (1996); Act No. 6730 § 54(d)(1)(Omnibus Justice Act of 2005).[8]

### III. ANALYSIS

The Superior Court did not terminate N.K.'s father's parental rights. N.K.'s guardian ad litem argues that the lower court may not close an abused or neglected minor's case, without continued review, unless the child has been returned to his parents or all parental rights have been terminated.

Several statutory provisions concerning the welfare of neglected children are germane to our review. V.I. CODE ANN. tit. 5, § 2549 (2004), empowers the Superior Court to transfer legal custody to a public agency responsible for the care of abused or neglected children. *See* 5 V.I.C. § 2549 (if a child is found to be abused or neglected, the court may transfer legal custody to a public or private agency responsible for the care of abused or neglected children). V.I. CODE ANN. tit. 5, § 2544 (2004) tasks DHS

---

[8] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

*In the interest of N.K., a minor*
D.C.Crim. App. No. 2005/0055
Memorandum Opinion
Page 7

as the public agency responsible for exercising temporary custody of abused and neglected children.[9]

---

[9] 5 V.I.C. § 2544 provides in pertinent part that,

(c) Within two days of taking child into custody, excluding weekends and holidays, the Department of Social Welfare shall file a complaint or petition and report to the Family Division of the court the specific circumstances justifying the taking of emergency temporary custody and the specific measures implemented to safeguard the physical and emotional well-being of the child. The court shall conduct an informal hearing and the court may order that the child remain in emergency temporary custody. . .
. . .
(d) Within ten days, including weekends and holidays, the court shall hold a hearing to determine whether there is probable cause to believe that the child is neglected or abused and the child is in imminent risk of death or serious injury and that removal is necessary until a final order of disposition. The court, for good cause shown, may provide a preliminary order for any of the following until a final order of disposition:
　(1) permit the child to remain with his parents, or other person responsible for the child's care, subject to such conditions and limitations as the court may prescribe; or
　(2) place the child under protective supervision under section 2551 of this title; or
　(3) make the child the subject of an order of protection under section 2552 of this title; or
　(4) transfer custody to any of the following:
　　(A) a relative or other individual found by the court to be qualified and willing to receive and care for the child;
　　(B) a public or private agency responsible for the care of abused or neglected children. *Id.* (the references to the Department of Social Welfare in Title 5 of the V.I. Code, are deemed to refer and apply to the Department of Human Services pursuant to Act June 24, 1987, No. 5265, § 201, Sess. L. 1987, p. 22; V.I. CODE ANN. tit. 3, § 437 (2004).

*In the interest of N.K., a minor*
D.C.Crim. App. No. 2005/0055
Memorandum Opinion
Page 8

Under V.I. CODE ANN. tit. 5, § 2554 (c) and (d), the Superior Court is explicitly required to review the status of all children removed from their home at least once every six months following the initial dispositional order by which the child was removed. *Id.* At each review hearing, pursuant to section 2554, where the child is not returned home and parental rights are not terminated, the court must establish certain facts on the record including: (1) what services have been provided to or offered to the parents or guardian to facilitate reunion; (2) whether the parents or guardians are satisfied with the services offered; (3) the extent to which the parents or guardian have visited the child and any reasons why visitation has not occurred or been infrequent; (4) whether the agency is satisfied with the cooperation given it by the parents or guardian; (5) whether additional services are needed to facilitate the return of the child to his parents or guardians; if so, the court shall order such services when appropriate; and (6) when return of the child may be expected. *Id.*[10]

---

In pertinent part, 5 V.I.C. § 2554 (c) and (d) provide that,

[10] (c) A report shall be sent by the Department of Social Welfare to the court ninety days after the removal of a child pursuant to a dispositional order. <u>The status of all children removed from their home shall be reviewed at least once every six months following the initial dispositional order by which the child was removed.</u>
   (d) <u>At each review hearing pursuant to this section where the child is not returned home and parental rights are not terminated, the court shall establish on the record</u>:

*In the interest of N.K., a minor*
D.C.Crim. App. No. 2005/0055
Memorandum Opinion
Page 9

    *In re D.H.*, 1998 U.S. Dist. LEXIS 16227 (D.V.I. App. Div. Oct. 13, 1998) is squarely analagous. That case concerned a minor child who was subject to severe physical abuse and was removed from her parents' home. However, neither parent's parental rights were terminated. Nonetheless, the trial court closed the case. We interpreted 5 V.I.C. §§ 2544, 2549 and 2554, to require continued judicial review where parental rights have not been terminated or the child has not been returned to her parents. *In Re D.H.*, 1998 U.S. Dist. LEXIS 16227, *at 15. We explicitly concluded that the trial court erred in closing the case where neither circumstance was met. *Id.* Here, it is clear that N.K. was not returned to either

---

    (1) what services have been provided to or offered to the parents or guardian to facilitate reunion;
    (2) whether the parents or guardians are satisfied with the services offered;
    (3) the extent to which the parents or guardian have visited the child and any reasons why visitation has not occurred or been infrequent;
    (4) whether the agency is satisfied with the cooperation given it by the parents or guardian;
    (5) whether additional services are needed to facilitate the return of the child to his parents or guardians; if so, the court shall order such services when appropriate; and
    (6) when return of the child may be expected.

*Id.*

*In the interest of N.K., a minor*
D.C.Crim. App. No. 2005/0055
Memorandum Opinion
Page 10

parent. Moreover, N.K.'s father's rights were not terminated.[11] Yet, this case was closed.[12]

DHS has a statutory obligation to ensure that necessary services are being provided to neglected and abused minors and their families.[13] *Id.* *at 12. To ensure that DHS fulfills its

---

[11] Parental rights can only be terminated under the following circumstances: (a) A proceeding to terminate parental rights shall be instituted with the filing of a written petition giving with particularity all factual and other allegations relied upon in asserting that parental rights should be terminated. (b) The Family Division of the court shall terminate parental rights when it finds by clear and convincing evidence that a child has been removed from his home pursuant to 5 V.I.C. § 2549, and has remained in an out-of-home placement for six months or more and that during that time the Department of Social Welfare has made continuous diligent, but unsuccessful efforts to reasonably insure that the child will not be subject to further abuse and neglect if returned home and the parent has not made a good-faith and diligent effort at rehabilitation. V.I. Code Ann. tit. 5, § 2550 (2004)..

[12] Even if the court has transferred legal custody, the parent retains the power to make decisions that continue to affect the child, such as the child's religious affiliation." *In re D.H.*, 1998 U.S. Dist. LEXIS 16227, *at 11. "[N]atural parents have a fundamental liberty interest in the care, custody and management of their children." *Id.* This interest "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Id.*

[13] Section 2536 specifically provides that:

The Department of Social Welfare shall be responsible for providing, directing or coordinating the appropriate and timely delivery of services to abused children and their families, including the care of those abused or neglected children who are placed in the custody of the Department of Social Welfare upon the granting of a petition by the Territorial Court.

*In the interest of N.K., a minor*
D.C.Crim. App. No. 2005/0055
Memorandum Opinion
Page 11

obligations, the Superior Court is required to conduct dispositional hearings every six months unless: (1) the child has been returned home, or (2) parental rights have been terminated. *In re D.H.*, 1998 U.S. Dist. LEXIS 16227, *at 15. Where these occurrences have not taken place, the Superior Court file must remain open and dispositional hearings must be conducted every six months. *Id.*

## IV. CONCLUSION

Because the trial court had not conclusively disposed of N.K.'s father's parental rights, it was statutorily compelled to continue judicial review over this case concerning a neglected child. Accordingly, to avoid ambiguity over who ultimately exercises parental rights over N.K., and to protect this child's welfare, we remand this matter for continued judicial review and disposition concerning the parental rights of the father.

---

V.I. Code Ann. tit. 5, § 2536(d).